UNITED STATES of America, Appellee,

v.

**Mark John LAMERE, Appellant.**

UNITED STATES of America, Appellee,

v.

**Jean–Paul Allen LAMERE, Appellant.**

Nos. 91–3566, 91–3806.

United States Court of Appeals, Eighth Circuit.

Submitted June 8, 1992.

Decided Nov. 23, 1992.

Scott Tilsen, Minneapolis, Minn., argued, for Mark John Lamere; Robert Specter, argued, for Jean–Paul Allen Lamere (Virginia G. Villa, on the brief).

John Lee, Minneapolis, Minn., argued (Kristin Masselink, Legal Intern., on the brief), for appellee.

Before BOWMAN and LOKEN, Circuit Judges, and HUNTER,* Senior District Judge.

ELMO B. HUNTER, Senior District Judge.

This case involves the consolidated appeals of two brothers, Mark John and Jean–Paul Lamere, who were sentenced on counterfeiting convictions. The brothers were charged under a seven count federal indictment on May 22, 1991. Mark John Lamere pled guilty to Count Three of the indictment, attempting to pass a counterfeit obligation of the United States in violation of 18 U.S.C. § 472, and was sentenced to twelve months imprisonment followed by a two year period of supervised release. Jean–Paul Lamere pled guilty to Count Five of the indictment, as it related to the possession and concealment of counterfeit obligations of the United States in violation of 18 U.S.C. § 472, and was sentenced to twelve months imprisonment followed by a two year period of supervised release. Both brothers appeal their sentences on the basis that the district court erred in its application of the United States Sentencing Commission Guidelines (hereinafter "Sentencing Guidelines" or "Guidelines").[1]

## BACKGROUND

On May 15, 1990, Mark John Lamere purchased a Canon color laser copier and had it delivered to a space he rented in Minneapolis, Minnesota. Over the next few days, he made color photo copies of United States currency twenty dollar bills and one hundred dollar bills. On May 19, 1990, Mark John Lamere attempted to pass one of the counterfeit one hundred dollar bills, as payment for a drink at the Perimeter nightclub in Minneapolis. The bartender became suspicious of the bill and called the club manager. The club manager examined the bill and called the police.

Mark John Lamere was arrested and questioned that same evening, at the Hennepin County Jail. At that time, ten identical bills were recovered from his person. Mark John Lamere denied that he knew the bills were counterfeit, stating that he received them the night before from an unidentified man to whom he sold a Rolex watch.

Later the same evening, Mark John Lamere called his brother, Jean–Paul Lamere, from the jail and requested that he remove from Mark John's apartment a portfolio that contained counterfeit money. Jean–Paul retrieved the portfolio, as requested, and stored it in his girlfriend's attic. Approximately four months later, the existence of the portfolio in the girlfriend's attic was reported to the police. Law enforcement officers, acting on the report, recovered a quantity of counterfeit United States currency in the form of one hundred dollar bills and twenty dollar bills in various stages of manufacture: the counterfeit bills consisted of $12,420 in bills with both fronts and backs, $15,560 in bills with fronts only and $11,620 in bills with backs only, amounting to a total of $39,600 in counterfeit currency. Along with the counterfeit bills, a passport of Jean–Paul Lamere and a business card from the copy machine seller were also found.

As a result of the discovery of the counterfeit money in the attic, the Secret Service executed a search warrant on the business space rented by Mark John Lamere and recovered the Canon color laser copier.

---

* The HONORABLE ELMO B. HUNTER, Senior United States District Judge for the Western District of Missouri, sitting by designation.

1. References to the United States Sentencing Commission Guidelines, in this opinion, are to the Guidelines in effect at the time appellants were sentenced (Nov. 1991).

Secret service lab tests performed on the seized copier and bills confirmed certain associations between the two.

Mark John Lamere pled guilty to passing counterfeit currency, and Jean–Paul Lamere pled guilty to possessing counterfeit currency, both in violation of 18 U.S.C. § 472. The brothers' sentences were calculated pursuant to § 2B5.1 of the United States Sentencing Guidelines. The offense of conviction for both brothers carried a base offense level of nine. U.S.S.G. § 2B5.1(a). Additionally, it was determined that the face value of the counterfeit currency involved was between $20,000 and $40,000, requiring the addition of four offense levels to the base of nine, resulting in an overall offense level of thirteen. U.S.S.G. §§ 2B5.1(b) and 2F1.1. Over appellants' objections, the district court found the offense level to be appropriate.

Mark John Lamere's offense level was increased by two additional levels, pursuant to U.S.S.G. § 3C1.1, upon a determination that he willfully obstructed or impeded justice in that he "directed another ... to conceal evidence which resulted in a material hindrance to the official investigation, prosecution and sentencing." Similarly, Jean–Paul Lamere's offense level was adjusted upward two levels, upon a determination that "he attempted to conceal evidence which resulted in a material hindrance to the official investigation, prosecution and sentencing." Again, over appellants' objections, the district court found these adjustments to be appropriate.[2]

## DISCUSSION

Mark John Lamere and Jean–Paul Lamere now appeal. They both contend that the district court erred in its determination of the amount of counterfeit currency involved, for the purpose of sentencing. Additionally, both brothers contend, on slightly different grounds, that the district court erred in applying a two point enhancement for obstruction of justice.

## I. STANDARD OF REVIEW

A defendant may appeal a sentence that was imposed as a result of an incorrect application of the sentencing guidelines. 18 U.S.C. § 3742(a)(2). Correct application of the Sentencing Guidelines is a question of law subject to *de novo* review by this Court. *United States v. Werlinger*, 894 F.2d 1015, 1016 (8th Cir. 1990). Review of the factual determinations, upon which the sentencing court bases its sentence, is, however, subject to the clearly erroneous standard of review. *United States v. Phillippi*, 911 F.2d 149, 152 (8th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 702, 112 L.Ed.2d 691 (1991).

In this case, the plea agreements and sentencing stipulations stated that it was the government's opinion that appellants had accepted responsibility and should receive the relevant two point reduction. Similarly, the presentence investigation and report calculated appellants' offense levels to include the two point acceptance of responsibility reductions. That determination was ultimately applied by the sentencing court.

Since the appropriateness of this reduction has not been raised on appeal, we will not reach it in this case. We can only presume that the district court, while not explicitly stating so, considered this case to be one of the "extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 [should] apply." *See id.* In the future, we would hope that those determining that both adjustments should apply to a particular sentence would specifically state the findings and reasons supporting their determination that the case is "extraordinary" as contemplated by the Guidelines.

---

**2.** More precisely, the district court determined the following calculation was appropriate: (1) the base offense level was 9; (2) based on the amount of counterfeit currency involved, 4 levels were added resulting in an offense level of 13; (3) based on the determination of obstruction of justice, 2 levels were added resulting in an offense level of 15; (4) based on appellants' acceptance of responsibility 2 levels were subtracted resulting in a total offense level of 13.

We have previously noted the inconsistency of a court finding that a defendant has accepted responsibility and at the same time obstructed justice. *See United States v. Werlinger*, 894 F.2d 1015, 1015–16 n. 2 (8th Cir.1990). The Guidelines provide that: "Conduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant *has not accepted* responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply." U.S.S.G. § 3E1.1, comment (n. 1) (emphasis added).

## II. CALCULATION OF THE AMOUNT OF COUNTERFEIT CURRENCY

### A. APPLICATION OF THE GUIDELINES

1. *District court's reference to Application Note 7 (U.S.S.G. § 2F1.1)*

█ After appellants pled guilty to the above-referenced counterfeiting offenses, the district court applied Guideline 2B5.1, which provides for a base offense level of nine, U.S.S.G. § 2B5.1(a), and further states that, if the face value of the counterfeit currency exceeds $2,000, the sentencing court shall increase the offense level according to the table found at Guideline 2F1.1 (Fraud and Deceit), U.S.S.G. § 2B5.1(b)(1).

It has been held that the reference in Guideline 2B5.1 to the "table" contained in the fraud and deceit guideline (U.S.S.G. § 2F1.1(b)(1)) limits the sentencing court's reference to the table only, and not the entire fraud and deceit guideline. *United States v. Payne*, 952 F.2d 827, 830 (4th Cir.1991); *see also* U.S.S.G. § 1B1.5, comment (n. 1) ("A reference may also be to a specific subsection of another guideline.... In such case, only the specific subsection of that other guideline is used.") In *Payne*, the Fourth Circuit held it was error for the sentencing court to consider additional offense enhancements contained in U.S.S.G. 2F1.1(b)(2) and remanded the matter back to the district court for recalculation of the sentence. 952 F.2d at 830. While this Court is not bound by the Fourth Circuit's determination, we do not, and need not, take issue with it.

In this case, after describing the state of the counterfeit currency at issue, the sentencing court found that there was a combined total of $39,600 in counterfeit currency. The court went on to explain this finding, in part, by reference to Application Note 7 to 2F1.1, which instructs that: in keeping with the Commission's policy of attempts, "if a probable or intended *loss* that the defendant was attempting to inflict can be determined, that figure should be used if it was larger than the actual loss included." Sent. Tr. at 27, *United States*

*v. Mark John Lamere, Jean–Paul Allen Lamere*, No. 3–91 CR 73(01)(02) (D.Minn. Nov. 13, 1991) (emphasis added); *compare* U.S.S.G. § 1B1.5, comment (n. 1). The court reasoned that, since none of the currency in question was destroyed and, in fact, was relocated for safe keeping, appellants' conduct suggested that all the counterfeit bills were of some value and intended to be used or completed at a later date.

Appellants argue that the sentencing court's reference to Application Note 7 is, under *Payne, supra,* error as a matter of law. We disagree.

The Guidelines at § 2F1.1(b)(1) set out the following table:

| Loss (Apply the Greatest) | Increase in Level |
|---|---|
| (A) $2,000 or less | no increase |
| (B) More than $5,000 | add 1 |
| (C) More than $5,000 | add 2 |
| (D) More than $10,000 | add 3 |
| (E) More than $20,000 | add 4 |
| (F) More than $40,000 | add 5 |
| (G) More than $70,000 | add 6 |
| (H) More than $120,000 | add 7 |
| (I) More than $200,000 | add 8 |
| (J) More than $350,000 | add 9 |
| (K) More than $500,000 | add 10 |
| (L) More than $800,000 | add 11 |
| (M) More than $1,500,000 | add 12 |
| (N) More than $2,500,000 | add 13 |
| (O) More than $5,000,000 | add 14 |
| (P) More than $10,000,000 | add 15 |
| (Q) More than $20,000,000 | add 16 |
| (R) More than $40,000,000 | add 17 |
| (S) More than $80,000,000 | add 18 |

U.S.S.G. § 2F1.1(b)(1). Determining that the amount of counterfeit currency was more than $20,000 but less than $40,000, the sentencing court added four offense levels to the base offense.

Appellants' argument that the direction in § 2B5.1, to refer to the table found in § 2F1.1, amounts to a reference to a specific subsection—the "table"—and, thus, prohibits the court from referring to or considering Application Note 7 is misplaced. Indeed, the explicit reference to the "table" in § 2F1.1 could be read as referring only to the specific subsection in which the table is found (U.S.S.G. § 2F1.1(b)(1)). *See Payne*, 952 F.2d at 828–30. Under such a reading, it would be error for the sentencing court, for example, to increase appellants' offense level based upon the specific offense characteristics contained in

§§ 2F1.1(b)(2) through (b)(6). This, however, is not what the district court did.

In referring to Application Note 7, the district court did not consider characteristics in addition to those contained in § 2F1.1(b)(1)—the "table". The Court merely referred to the appropriate commentary for guidance in interpreting the word "loss", which clearly appears in the "table"—the "specific subsection" to which the Court was referred.

A fair reading of Application Note 7 admits only that Note 7 endeavors to define or explain the word "loss" as used in § 2F1.1(b)(1), the "specific subsection" that the sentencing court is instructed to consult in determining the offense level for counterfeiting offenses involving more than $2,000 in counterfeit items. U.S.S.G. § 2B5.1(b)(1) ("If the face value of the counterfeit items exceeded $2,000, increase by corresponding number of levels from the table at § 2F1.1 (Fraud and Deceit).") Indeed, failure, on the part of the sentencing court, to follow the commentary that accompanies the relevant guideline section "could constitute an incorrect application of the guidelines, subjecting the sentence to possible reversal on appeal." U.S.S.G. § 1B1.7.[3]

■ We do not believe it is error for a district court, when instructed by the Guidelines to refer to a particular subsec-

tion in making its sentencing determination, to look to the underlying commentary for guidance in interpreting a word or phrase that appears in the specific subsection to which the court was referred. Accordingly, we hold that the district court's reference to Application Note 7, in this case, was not error as a matter of law.

2. *Inclusion of partially completed bills (Application Note 4 to U.S.S.G. 2B5.1)*

■ Appellants also argue that the sentencing court erred, as a matter of law, by its failure to follow Application Note 4 to U.S.S.G. § 2B5.1. According to appellants, Application Note 4 states: "For purposes of subsection (b)(1) [of U.S.S.G. § 2B5.1], do not count items that obviously were not intended for circulation (e.g. discarded defective items)." As authority for this proposition, appellants cite the *1991 Federal Sentencing Manual* App.–131 (Matthew Bender & Co. ed.). The government correctly points out that Application Note 4 was only a *proposed* amendment: it was never adopted and does not appear as part of the Guidelines.[4] Accordingly, the district court could not have erred by failing to consider an application note that was merely proposed but never adopted as part of the Guidelines.[5]

■ Further support for the district court's determination of the amount of currency involved is found in § 2B5.1 itself.

---

**3.** Once the sentencing court was directed to the table in U.S.S.G. § 2F1.1(b)(1), U.S.S.G. § 1B1.7 strongly encourages the court to consider any commentary directly related to § 2F1.1(b)(1). Guideline 1B1.7 instructs that the commentary serves multiple purposes, such as interpreting the guideline or explaining how it is to be applied. U.S.S.G. § 1B1.7. It goes on to warn that failure to follow the commentary could result in reversible error. *Id.* Accordingly, once the sentencing court was required to consider § 2F1.1(b)(1)—the "table"—it would have been imprudent for the district court not to consider the relevant commentary thereunder.

**4.** The government's brief points out that Application Note 4 was proposed but not adopted. Note 4 and other proposed amendments to U.S.S.G. § 2B5.1 were proposed at 54 Fed.Reg. 9,132 (1989). Adoption of the amendments to U.S.S.G. § 2B5.1 did not include the proposed Application Note 4. *See* 54 Fed.Reg. 21,356 (1989); *see also* U.S.S.G. § 2B5.1, comments.

(ns. 1–3) (Application Note 4 does not appear) and hist. n. (Historical Note refers reader to amendments 16 & 115 in Appendix C.); U.S.S.G.App. C, at 7 (amend. 16), 46 (amend. 115) (Nov.1991) (Application Note 4 neither included nor mentioned).

**5.** We would note in passing that, even if Application Note 4 applied, the district court's determination is consistent with the Note's admonition not to "count items that *obviously were not intended for circulation* (e.g., *discarded defective* items)." (Emphasis added). Here the bills in question were not *discarded* defective items. On the contrary, they were moved to a secret location for safe-keeping. The district court found that the totality of appellants' conduct supported the inference that there was a purpose to retain the bills in question for future use or completion and passage. Accordingly, it cannot be said that the bills were "items that obviously were not intended for circulation."

As noted above, U.S.S.G. § 2B5.1 establishes the offense level for counterfeiting offenses. It provides for a base offense level of nine to be increased to reflect the "face value" of the counterfeit currency involved. It does not, however, require that the counterfeit bill or bills in question be of passable quality. It merely states that: " 'Counterfeit' ... means an instrument that purports to be genuine but is not, because it has been falsely made or manufactured in its entirety." U.S.S.G. § 2B5.1, comment. (n. 2). In contrast to § 2B5.1(b)(1), under which appellants were sentenced, § 2B5.1(b)(2) requires that the counterfeit be capable of escaping detection when subjected to minimal scrutiny. *See* U.S.S.G. § 2B5.1, comment. (n. 3) ("Subsection (b)(2) does not apply to persons who ... produce items that are so *obviously counterfeit* that they are unlikely to be accepted even if subjected to minimal scrutiny." (emphasis added)).

■ In the absence of legislative history to the contrary, this Court must presume that the distinction between subsections (b)(1) and (b)(2) reflects the intention of the Sentencing Commission. *See Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983). Where language is included in one section of a statute but omitted in another section of the same statute, it is generally presumed that the disparate inclusion and exclusion was done intentionally and purposely. *Id.* (citing *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir.1972)). Consistent with this reasoning, words employed in a statute should not be discarded as being mere surplusage or being meaningless. This rule applies, in particular force, where such terms are included in some sections and excluded in other sections of the same act. Accordingly, we conclude that the distinction between these two subsections was intended.

If anything, the legislative history supports the conclusion that the Sentencing Commission did *not* intend to exempt partially completed bills from the sentencing calculation under § 2B5.1(b)(1). As noted above, there was a proposed application note that would have directed the sentencing court not to count defective discarded bills. This note, however, was rejected, further evidencing an intention that the courts should appropriately consider less than perfectly completed counterfeit bills.

3. *Application Note 2 to U.S.S.G. § 2B5.1*

■ Finally, at oral arguments, counsel for appellants argued that the district court erred, as a matter of law, by failing to follow Application Note 2 to U.S.S.G. § 2B5.1. Application Note 2 states, in part: " 'Counterfeit,' as used in this section, means any instrument that purports to be genuine but is not, because it has been falsely made or manufactured in its *entirety.*" U.S.S.G. § 2B5.1, comment. (n. 2) (emphasis added). Appellants urge that limiting the definition of "counterfeit" to only those items "made or manufactured in [their] *entirety*" precludes consideration of any partially completed bills.

This argument is unavailing. Appellants take this sentence out of context and thereby misapprehend the import of the phrase "made or manufactured in its entirety." If one reads the entire application note, the phrase "made or manufactured in its entirety" admits a different meaning than that urged by appellants. Application Note 1 instructs: " 'Counterfeit,' ... means an instrument that purports to be genuine but not, because it has been falsely *made or manufactured in its entirety.* Offenses involving *genuine instruments that have been altered* are covered under § 2B5.2." U.S.S.G. § 2B5.1, comment. (n. 1) (emphasis added). A fair reading of the entire Note indicates that the commission was attempting to distinguish items falsely made or manufactured from "whole cloth" (counterfeit instruments) from genuine items that have been changed or altered to appear to be different from the original item (altered or forged instruments). *Compare* U.S.S.G. § 2B5.1 and U.S.S.G. § 2B5.2. According-

ly, we conclude appellants' argument on this point to be without merit.

For the aforementioned reasons, we hold that the district court did not err, as a matter of law, in its application of U.S.S.G. § 2B5.1 (including its reference to the "table" in U.S.S.G. § 2F1.1) to the offenses of the appellants.

## B. DISTRICT COURT'S FACTUAL FINDINGS

 Appellants alternatively argue that, even if the district court did not err, as a matter of law, it erred in its factual determination as to the amount of counterfeit currency involved in the offense. Appellants contend that inclusion of the partially completed bills in calculating the face value of the counterfeit currency was clearly erroneous.

In this matter, the counterfeit bills in question were admitted into evidence and were physically present before the court for observation and inspection. Further, the Court determined that the totality of the appellants' conduct—the fact that none of the currency in question was destroyed, rather, subsequent to Mark John Lamere's arrest, it was relocated and hidden for safekeeping—supported the conclusion that appellants attributed value and utility to the entire $39,600 amount of counterfeit currency recovered. With regard to Jean–Paul Lamere, evidence was before the sentencing court that, subsequent to brother Mark John's arrest and Jean–Paul's relocation of the counterfeit currency, Jean–Paul participated in negotiations to purchase three kilograms of cocaine the consideration for which would be a quantity of counterfeit currency.

The district court found appellants' conduct to suggest a purpose to use, or to retain for ultimate completion and passage, the partially completed bills. Upon these factual findings, the district court based its determination as to the total amount of counterfeit currency to be counted, for purposes of determining appellants' offense levels under the Guidelines. The record supports the findings made by the district court and we will not now supplant those findings with the one's urged by appellants or our own. We hold that the above-referenced district court findings are not clearly erroneous.

For the aforementioned reasons we AFFIRM the district court's determination of the amount of counterfeit currency to be used in calculating appellants' offense levels, pursuant to the United States Sentencing Commission Guidelines.

## III. ENHANCEMENT OF OFFENSE LEVEL FOR OBSTRUCTION OF JUSTICE

 Section 3C1.1 of the United States Sentencing Commission Guidelines provides that:

> If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the level by two levels.

U.S.S.G. § 3C1.1. The sentencing court applied the two point enhancement to the appellants, both of whom objected and both of whom now challenge that application on appeal. Determination of whether U.S.S.G. § 3C1.1 applies to appellants' conduct is an interpretation of the scope of the Guidelines and is reviewed *de novo*. *United States v. Werlinger*, 894 F.2d 1015 (8th Cir.1990).

While both appellants challenge the district court's application of the two point enhancement under U.S.S.G. § 3C1.1, they do so on slightly different grounds. Accordingly, we shall consider appellants' arguments separately.

## A. APPELLANT MARK JOHN LAMERE

 Mark John Lamere was convicted solely on the basis of Count III of the indictment, which charged him with pass-

ing or attempting to pass a counterfeit one hundred dollar bill, with intent to defraud, on May 19, 1990. The district court applied the obstruction enhancement for Mark John Lamere's role in directing his brother to conceal the $39,600 in counterfeit currency found in the attic. Mr. Lamere contends that the obstruction enhancement was applied based on the concealment of the $39,600 in the attic, and that he was convicted of passing a single, and different, counterfeit one hundred dollar bill, an offense separate from and unrelated to the money found in the attic. U.S.S.G. § 3C1.1 directs that the obstruction must be related to the "instant offense" for the enhancement to apply. Under his interpretation, concealment of the $39,600 was unrelated to the offense for which he was convicted. He argues the concealed counterfeit notes were not material to the investigation, prosecution or sentencing on the single count of passing a counterfeit one hundred dollar, therefore, the district court's consideration of concealment of the $39,600, for obstruction purposes, amounted to an incorrect application of the Guidelines. We disagree.

 Mark John Lamere contends that the $39,600 in counterfeit bills was not material to the investigation, prosecution or sentencing on the count of his conviction. The official investigation, in this case, began when Mark John Lamere was interviewed by the police on May 19, 1990, at the bar where he attempted to pass a counterfeit one hundred dollar bill. An increase for obstruction is properly applied for conduct that occurs during the investigation, prosecution or sentencing phases of the instant offense. *See, e.g., United States v. Patterson*, 890 F.2d 69 (8th Cir. 1989) (giving false name to officer); *United States v. Roberson*, 872 F.2d 597 (5th Cir.), *cert. denied*, 493 U.S. 861, 110 S.Ct. 175, 107 L.Ed.2d 131 (1989) (hiding stolen credit card under seat of police car).[6]

This Court has interpreted the phrase "instant offense" in U.S.S.G. § 3C1.1 to mean the "offense of conviction." *United States v. Dortch*, 923 F.2d 629, 632 (8th Cir.1991). In Mark John Lamere's case, the offense of conviction was passing or attempting to pass a counterfeit one hundred dollar bill, with intent to defraud. Accordingly, we must determine if, by concealing the $39,600 in counterfeit currency, appellant obstructed or impeded, or attempted to obstruct or impede, the administration of justice with regard to the investigation, prosecution or sentencing on his conviction for passing the counterfeit one hundred dollar bill. The Application Notes to U.S.S.G. § 3C1.1 define obstructing conduct to include "destroying or *concealing* or *directing or procuring another person* to destroy or *conceal* evidence that is material to an official investigation or judicial proceeding ..., or attempting to do so." U.S.S.G. § 3C1.1, comment. (n. 3(d)) (emphasis added).

 As our discussion in part II. of this opinion, *supra*, demonstrates, the $39,600 in counterfeit currency, which appellant sought to conceal, was particularly relevant to the sentencing proceedings in this matter. Additionally, on the single count of passing counterfeit, the govern-

---

6. Section 3C1.1 admits a limited exception for certain conduct directed at concealing or destroying, which occurs contemporaneously with arrest. U.S.S.G. § 3C1.1, comment. (n. 3(d)). The commentary directs that if the conduct directed at concealment or destruction of material evidence "occurred contemporaneously with arrest (*e.g.,* attempting to swallow or throw away a controlled substance), it shall not, standing alone, be sufficient to warrant an adjustment for obstruction unless it resulted in a material hindrance to the official investigation or prosecution of the instant offense or the sentencing of the offender." *Id.* We read this limited exception to include only conduct admitting a spontaneous or visceral or reflexive response occurring at the point arrest becomes imminent and to be further limited to only that evidence which is within the subject's control at or near the scene of the arrest. It does not, in our view, apply to the cool and deliberate actions taken by the appellant in this case. Well after he had been arrested, transported to the police station and questioned, he telephoned his brother and instructed him to go to his residence and retrieve and secrete all remaining counterfeit currency.

ment carried the burden of proving appellant's knowledge of the counterfeit character of the bill he attempted to pass, and that he had a general intent to defraud a third party or parties with the bill. *United States v. Baker,* 650 F.2d 936, 937 (8th Cir.1981). At the time of his arrest, Mark John Lamere claimed that his possession of the counterfeit bills was innocent; he asserted that he had received them in consideration for a Rolex watch he had sold the previous evening. Clearly, the $39,600, which appellant sought to conceal, was material to disproving his claim of innocent possession, as well as proving his intent to defraud by passing the bill at the Perimeter Bar.[7]

We hold that the district did not err in its application of the two point obstruction of justice enhancement under U.S.S.G. § 3C1.1 to the sentence of Mark John Lamere. Accordingly, we AFFIRM that portion of the district court's decision.

## B. APPELLANT JEAN–PAUL LAMERE

■ Count V, the count of Jean–Paul Lamere's conviction, was drawn under 18 U.S.C. § 472, which makes it a crime to, *inter alia,* possess or conceal counterfeit currency.[8] Count V charges that:

> On or about the 20th day of May, 1990, in the State and District of Minnesota, the defendant

---

7. At sentencing, appellant argued that since, no search was ever conducted of the premises from which the currency was moved, movement of the currency to his brother's girlfriend's attic did not, in fact, obstruct or impede any investigation. Whether or not law enforcement ultimately decided to search the premises from which the currency was removed is inapposite. It is the conduct of appellant, not law enforcement investigators, that is at issue under U.S.S.G. § 3C1.1. It is enough that the sentencing court could reasonably conclude that appellant attempted to obstruct or impede the investigation of his crime. *See generally, United States v. Patterson,* 890 F.2d 69, 71 (8th Cir.1989) (U.S.S.G. § 3C1.1 obstruction covers conduct calculated to mislead or deceive authorities).

Appellant concedes that the $39,600 in counterfeit currency concealed in the attic was evidence of other crimes, such as the manufacture

## JEAN–PAUL ALLEN LAMERE

with intent to defraud, did *possess* or *conceal* falsely made, forged, counterfeit obligations or securities of the United States, to wit: counterfeit $20 face value and $100 face value Federal Reserve Notes in the total approximate amount of $40,000; in violation of Title 18, United States Code, Section 472.

(Emphasis added). As noted above, pursuant to a written plea agreement, Jean–Paul Lamere pled guilty "to Count V of the indictment charging him with *possessing* or *concealing* falsely made counterfeit obligation of the United States." Plea Agreement and Sentencing Stipulations, *United States v. Jean–Paul Lamere,* Cr. No. 3–91–73(02), Minn.D. Aug. 20, 1991. (Emphasis added).

Appellant argues that the offense to which he pled guilty included the elements of *possession* and *concealment* of the counterfeit currency in question. This possession and concealment was at the direction of his brother and was one and the same with conduct upon which the district court supported its two point enhancement for obstruction of justice. Appellant urges that basing an obstruction enhancement upon the same conduct for which he was convicted amounts to "double counting" and is violative of the intention of the Sentencing Commission that Guideline sections

---

of counterfeit currency. He contends, however, that since these were crimes for which he was not convicted—indeed, such counts were dismissed by the government—the concealment of the $39,600 cannot be used as a basis for an obstruction enhancement. This Court has adopted no such rule. *See, e.g., United States v. Williams,* 879 F.2d 454, 456–57 (8th Cir.1989); *see generally, United States v. Snover,* 900 F.2d 1207, 1210 (8th Cir.1990).

8. The statute states:

> Whoever, with intent to defraud, passes, utters, publishes, or sells, or attempts to pass, utter, publish, or sell, or with like intent brings into the United States or *keeps in possession* or *conceals* any falsely made, forged, counterfeited or altered obligation or other security of the United States, . . .

is guilty of a violation of the statute. 18 U.S.C. § 472 (emphasis added).

should not be construed in a manner that would result in cumulative punishment for the same conduct. *See United States v. Werlinger,* 894 F.2d 1015, 1017–18 (8th Cir. 1990).

In *Werlinger,* this Court stated its opinion that the Guideline Commission "did not intend for the obstruction adjustment to apply cumulatively to the same conduct." *Id.* at 1017. This Court applies the presumption that sentence enhancement provisions will not be applied cumulatively, in the absence of a clear expression of legislative intent to the contrary. *Id.* (citations omitted). Put another way, "Congress does not intend to impose multiple punishments for one offense unless it clearly expresses an intent to do so." *Id.* (citations omitted). The Court reasoned that there is nothing in the Guidelines or its commentary to indicate a clear intention to impose cumulative punishments. *Id.* at 1018. On the contrary, the Guidelines Commission "has recognized that 'double-counting' conduct in applying the Guidelines is inconsistent with" the congressional goal of proportionality in sentencing and should be avoided. *Id.;* see also the commentary to various Chapter Three adjustments, which explain application so as to prevent "double-counting". This recognition, and resultant policy of mutual exclusivity "indicates that the Sentencing Commission did not intend for multiple Guidelines sections to be construed so as to impose cumulative punishment for the same conduct." *Werlinger,* 894 F.2d at 1018.

In *United States v. Lloyd,* this Court followed *Werlinger.* 947 F.2d 339 (8th Cir. 1990). *Lloyd* involved a defendant convicted for bankruptcy fraud. *Id.* The district court enhanced his offense level for obstruction of justice under U.S.S.G. § 3C.1 based on his conduct in concealing assets from bankruptcy court officers and for committing perjury. *Id.* This Court found the conduct supporting the enhancement to be coterminous with the conduct that was the basis for criminal charges. *Id.* Citing *Werlinger,* this Court held that U.S.S.G. § 3C1.1 (obstruction enhancement) does not apply to conduct that is part of the crime itself and remanded the case to the district court to resentence Lloyd. *Id.*

Here, the two level obstruction enhancement, as applied against Appellant Jean–Paul Lamere, was based upon conduct that was coterminous with the conduct for which he was convicted. Under *Werlinger* and *Lloyd, supra,* such enhancement would amount to "double-counting". Accordingly, we hold that the district court erred in applying U.S.S.G. § 3C1.1 obstruction enhancement to Appellant Jean–Paul Lamere. We therefore REVERSE that portion of the district court's decision.

## CONCLUSION

For the aforementioned reasons, we hereby AFFIRM the district court's conclusion as to the amount of counterfeit currency involved in the offenses of both appellants and the resulting sentencing enhancements based on between $20,000 and $40,000 in counterfeit currency. We further AFFIRM the district court's application of U.S.S.G. § 3C1.1 obstruction enhancement to Appellant Mark John Lamere and uphold his sentence *in toto.*

With regard to Appellant Jean–Paul Lamere, we hereby REVERSE the district court's application of U.S.S.G. § 3C1.1 obstruction enhancement and REMAND to the district court to resentence Jean–Paul Lamere without an enhancement for obstruction under U.S.S.G. § 3C1.1.