# United States Court of Appeals
## For the Eighth Circuit

_____

No. 11-3812

_____

United States of America

*Plaintiff - Appellee*

v.

Ryan John Unger

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - Cape Girardeau

_____

Submitted: June 11, 2012
Filed: August 8, 2012
[Unpublished]

_____

Before BYE, BEAM, and SMITH, Circuit Judges.

_____

PER CURIAM.

Ryan John Unger pleaded guilty pursuant to a plea agreement to one count of production of child pornography, in violation of 18 U.S.C. § 2251(a). At sentencing,

the district court[1] applied a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1. After applying the enhancement, the court then sentenced Unger to 292 months' imprisonment, the low end of the Guidelines range. On appeal, Unger argues that the district court erred in applying the obstruction-of-justice enhancement. Unger admits that he destroyed and concealed evidence but contends that because he promptly notified law enforcement of his disposal of evidence, and his actions caused no material hindrance or delay, the court should not have applied the enhancement. We affirm.

## I. *Background*

Unger pleaded guilty pursuant to a plea agreement to producing child pornography, in violation of § 2251(a). In the plea agreement, the parties stipulated that "[a] federal search warrant was executed at [Unger's] residence the evening of January 4, 2011," based on an undercover detective's identification of Unger's computer as possessing and offering to participate in the distribution of child pornography. Through peer-to-peer file sharing, the detective had discovered, *inter alia*, "pictures . . . of a prepubescent female touching the erect penis of an adult male." According to the plea agreement, on January 5, 2011, "at approximately 2:00 a.m., Ryan Unger voluntarily came to the Fredericktown Police Department and admitted that he was the user of the peer[-]to[-]peer file sharing account with the screen name 'Ryguy3434cp.'" Unger admitted to "us[ing] a Sony digital camera to take photographs of a sleeping seven[-]year[-]old child engaged in sexually explicit conduct." He "also admitted that he uploaded the images to his computer and peer[-]to[-]peer account for distribution to other individuals."

Following the entry of Unger's guilty plea, the United States Probation Office prepared a presentence investigation report (PSR). The PSR recommended, *inter alia*,

---

[1]The Honorable Stephen N. Limbaugh, Jr., United States District Judge for the Eastern District of Missouri.

a two-level enhancement pursuant to U.S.S.G. § 3C1.1 for obstruction of justice because "the defendant destroyed and attempted to destroy evidence related to the instant offense." The PSR also recommended a three-level reduction under U.S.S.G. § 3E1.1(a) and (b) for acceptance of responsibility. The PSR calculated a total offense level of 39.

With regard to the obstruction-of-justice enhancement, ¶ 12 of the offense-conduct portion of the PSR stated that when Unger went to the Fredericktown Police Department and made admissions regarding the production of child pornography, he also

> indicated that he destroyed computer evidence earlier that night and disposed of same in a trash bin near a local restaurant. A laptop and several flash drives were recovered from the trash bin. Officers further recovered an external hard drive and pieces of a laptop computer from another dumpster in the same vicinity. Investigation revealed that Unger threw the blue comforter [that appears in the images] and his camera in a creek outside of town. The comforter was recovered, but the camera was unable to be located.

In support of the "Adjustment for Obstruction of Justice," ¶ 17 of the PSR provided, in relevant part, that

> Unger destroyed computer equipment and disposed of the equipment and peripheral computer components in two separate dumpsters. He attempted to conceal the blue comforter by discarding it on a creek bank. The defendant also discarded a camera, which was never located.

The PSR assessed three criminal history points, resulting in a criminal history category of II. A total offense level of 39 and criminal history category of II resulted in a Guidelines range of 292 to 365 months' imprisonment.

Unger filed a sentencing memorandum in which he objected to the application of the obstruction-of-justice enhancement based on his "near contemporaneous reporting to the police station and confession" and the fact that "no material hindrance to the investigation occurred." At sentencing, Unger's counsel asserted that the obstructive conduct must "materially obstruct the investigation." Citing Application Note 4 to § 3C1.1, Unger's counsel argued:

> If [the obstructive] conduct occurred contemporaneous with an arrest—and then as an example, police were breaking in, they know there's an investigation going on, and they're busy flushing the drugs. Such . . . conduct standing alone isn't sufficient to warrant . . . an adjustment for obstruction.
>
> Now, this is a very different kind of case, but it's similar in some ways. Mr. Unger became aware of this search being conducted or there is an interest in an investigation of him. He admitted the obstructive conduct. And then [h]e went to the police station and not only confessed to the offense, but confessed to the obstructive conduct itself.
>
> So in no way did the conduct obstruct the investigation. The authorities would have neither nor [sic] the obstructive conduct nor have a confession but for his own actions.

Unger's counsel stated that Unger confessed in "the early morning hours of the 5th of January," while the search was conducted "on [January] 4th in the evening." Counsel represented that the confession was "within a 24-hour time frame—less than that, really probably 12 hours." According to Unger's counsel, Unger "didn't know what kind of investigation" was occurring; instead, "he knew . . . there were authorities in his house" and that "something was going on."

In response, the government argued that,

> as it's used in that guideline section[,] contemporaneously is applied as contemporaneously with his arrest, not contemporaneously with his confession nor with a time that he did any other acts.
>
> So if he destroys evidence contemporaneously with his arrest like swallowing drug evidence, then that would not qualify, but in this case it's not contemporaneously. It's just on the same—within the same 24-hour period or even within the same 12-hour period, but it's certainly not contemporaneously with.

The government emphasized that "[a]t the moment [Unger was] destroying the evidence he[] [was] not being arrested."

The court then inquired as to how much time had elapsed between the destruction of evidence and the confession. The government responded:

> In this case he reported he had done it earlier that evening. Mr. Unger, if I'm understanding correctly, was actually interviewed about 2 o'clock that morning on the 5th. The search was done on the 4th. And so this was destroyed between those two times.
>
> So we're talking about hours and certainly not at the same place. The stuff was all found discarded in a creek and then a [d]umpster. And some of it was never even recovered.

The court then asked "what the circumstances of the confession and [Unger's] admission were," to which the government replied that

> Unger was interviewed by the police department at that time and admitted statements consistent with what his girlfriend related, that he had discovered that his house had been searched, that he had found that some of his items were missing, that he immediately went out and

destroyed his computer and threw away the camera and the blanket and then went to the police station and got there about 2 o'clock.

According to the government, once Unger arrived at the police department, his confession "was fairly quick." The government stated that "there was hardly any time between the beginning of the conversation and his confession."

Thereafter, Unger's counsel commented that

although the example [i]n the [G]uidelines of what is now obstruction when evidence is destroyed is timed at the time of an arrest, I think it's less obstructive rather than more obstructive in these circumstances where they haven't gotten around to the arrest yet, and he's voluntarily appeared and made a confession.

At the time in the example in the [G]uidelines which they say is an obstruction you . . . don't know if the Defendant is going to admit his conduct, if he's going to trial. That's all unknown. And he's trying to destroy what appears to him to be evidence.

In what we have here the arrest hasn't even occurred, and he's undone the obstructive conduct, which is, I guess, what the Commission is trying to exclude.

The court determined that the obstruction-of-justice enhancement applied, stating:

The Court finds that the evidence does support the two-level enhancement for obstruction. With that said it's certainly a mitigating circumstance that within just a few hours of that conduct the Defendant confessed. And although, as I say, I do find that there has been a violation or an enhancement that needs to be applied, because of the obstructive conduct.

> I will take under consideration in imposing the sentence the fact
> that . . . the obstructive conduct was undone within just a few hours.

The district court "adopt[ed] as its additional findings of facts the [G]uidelines calculations as stated," resulting in a Guidelines range of 292 to 365 months' imprisonment. The court sentenced Unger to 292 months' imprisonment—"the bottom end" of the Guidelines range—explaining, in relevant part:

> I'm imposing the bottom end of the [G]uidelines and giving you lenient treatment in that regard, because, first of all, as we mentioned, that you did cooperate, and you confessed and you mitigated the fact that you destroyed evidence that was against you, and you did that from the start.

## II. *Discussion*

On appeal, Unger argues that the district court erred in applying the obstruction-of-justice enhancement under § 3C1.1. According to Unger, his "conduct fits squarely within the exception listed in Application Note 4(d)" because (1) he confessed within just a few hours of the obstructive conduct; (2) his disposal of evidence was reflexive and panicked, not willful; and (3)"[n]o material hindrance resulted from Unger's disposal of evidence, as the police recovered almost all of the discarded items, and there was no suggestion that the missing evidence was necessary to complete the investigation, to secure a conviction, or to calculate the sentence."

In response, the government argues that the district court did not err in applying the enhancement. According to the government, "Unger's destruction of the computer equipment, successful discarding of the digital camera, and attempt to hide the blue comforter occurred *several hours before* he voluntarily went to the police department and confessed to his crimes." As a result, the government concludes that "Unger's obstruction of justice was not contemporaneous with his arrest and there is no requirement to demonstrate the obstruction resulted in a 'material hindrance' to the investigation."

"We review de novo whether U.S.S.G. § 3C1.1 applies to specific conduct." *United States v. Sykes*, 4 F.3d 697, 699 (8th Cir. 1993) (per curiam).[2] Section 3C1.1 provides that

> [i]f (1) the defendant *willfully* obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.

(Emphasis added.) "An increase for obstruction is properly applied for conduct that occurs *during the investigation*, prosecution, or sentencing phases of the instant offense." *United States v. Lamere*, 980 F.2d 506, 515 (8th Cir. 1992) (emphasis added).

"A non-exhaustive list of examples of conduct to which [§ 3C1.1] applies appears in Application Note 4." *United States v. Martin*, 369 F.3d 1046, 1060 (8th Cir. 2004). Included in that list is the following conduct:

> (D) destroying or concealing or directing or procuring another person to destroy or conceal evidence that is material to an official investigation or judicial proceeding (e.g., shredding a document or destroying ledgers upon learning that an official investigation has commenced or is about

___

[2]On appeal, Unger has not challenged the factual recitation of his obstructive conduct as set forth in ¶¶ 12 and 17 of the PSR; instead, he only challenges the district court's legal conclusion that the obstruction-of-justice enhancement applies. Therefore, like the district court, we will accept the facts set forth in ¶¶ 12 and 17 of the PSR as true. *See United States v. Douglas*, 646 F.3d 1134, 1137 (8th Cir. 2011) ("If a defendant objects only to the PSR's recommendation, but not to the facts themselves, the court may accept the facts as true and rely on the unobjected-to facts in determining whether to impose an enhancement.").

to commence), or attempting to do so; *however, if such conduct occurred contemporaneously with arrest* (e.g., attempting to swallow or throw away a controlled substance), *it shall not, standing alone, be sufficient to warrant an adjustment for obstruction unless it results in a material hindrance to the official investigation or prosecution of the instant offense or the sentencing of the offender . . . .*

U.S.S.G. § 3C1.1 cmt. n.4 (emphases added).

Unger "argues that his conduct was not willful." *Martin*, 369 F.3d at 1061. "However, it is difficult to imagine a definition of 'willful' that would exclude [Unger's] conduct here." *Id.* As we have previously explained:

"It is true that the guideline text incorporates a requirement of 'willful' conduct. Indeed, we have recognized that 'the term 'willfully' should be reserved for the more serious case, where misconduct occurs with knowledge of an investigation, *or at least with a correct belief that an investigation is probably underway.*'"

*Id.* (quoting *Brown v. United States*, 169 F.3d 531, 536 (8th Cir.1999) (quoting *United States v. Oppedahl*, 998 F.2d 584, 586 (8th Cir. 1993))).

In the present case, Unger "clearly knew or believed an investigation was underway," *id.*, when he (1) destroyed computer evidence and disposed of it in a trash bin near a local restaurant and (2) threw the blue comforter and his camera in a creek outside of town on the night of January 4, 2011. Unger's counsel conceded before the district court that Unger "became aware of th[e] search being conducted" at his home. According to counsel, Unger "knew . . . there were authorities in his house," and "he knew something was going on."[3] And, as the government points out, in response to

---

[3]In his brief, Unger also concedes that he knew that an investigation was underway, as he states "*[u]pon seeing a police car outside of his house*, Unger, who

the search,"Unger not only took the time to destroy evidence and then place the destroyed evidence in two separate trash dumpsters, he also drove out of town and threw a comforter and digital scale in a creek." We conclude that Unger's actions in destroying and disposing of evidence were "willful."

Furthermore, we conclude that "[b]ecause [Unger's] actions were not *contemporaneous with arrest*, the exception [listed in Application Note 4(d)] cannot apply." *Martin*, 369 F.3d at 1061 (emphasis added).

> We read this limited exception to include only conduct admitting a spontaneous or visceral or reflexive response *occurring at the point arrest becomes imminent* and to be further limited to only that evidence which is within the subject's control *at or near the scene of the arrest*.

*Lamere*, 980 F.2d at 515 n.6 (emphases added).

For example, in *Lamere*, we held that the contemporaneous-with-arrest exception did not apply to the "cool and deliberate actions" of a defendant who, "[w]ell after he had been arrested, transported to the police station and questioned, . . . telephoned his brother and instructed him to go to his residence and retrieve and secrete all remaining counterfeit currency." *Id.*

Here, by Unger's own admission,[4] at least one to seven hours passed between his destruction and attempted concealment of the evidence and his voluntary confession and subsequent arrest. Thus, Unger's conduct did not occur

---

was driving at the time, panicked and discarded several items of evidence." (Emphasis added.)

[4]In his brief, Unger asserts that "[b]etween one and seven hours passed between Unger's discovery of the investigation and his complete confession, a confession directly followed by his arrest."

*contemporaneously* with his arrest; instead, Unger's destruction and attempted concealment of evidence occurred *prior to* his cooperation with law enforcement and subsequent arrest.

Moreover, the evidence that Unger destroyed and attempted to conceal was not within his "control at or near the scene of the arrest," *id.*, as Unger removed the evidence from his house on January 4, 2011, while his confession and subsequent arrest occurred at the Fredericktown Police Department on January 5, 2011.

Finally, "[t]he fact the government would not have known of the destroyed evidence without [Unger's] cooperation does not take the conduct outside the scope of § 3C1.1." *United States v. Thompson*, 367 F.3d 1045, 1047 (8th Cir. 2004) (per curiam). As a result, "we hold [Unger's] admitted conduct falls within § 3C1.1 and conclude the district court properly applied the two-level enhancement." *Id.*

Therefore, we hold that the district court did not err in applying the obstruction-of-justice enhancement.[4]

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____

---

[4]Because the exception listed in Application Note 4(d) does not apply, we need not address Unger's contention that "[n]o material hindrance resulted from Unger's disposal of evidence."