NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2254
_____

UNITED STATES OF AMERICA

v.

DONALD ANTHONY YOUNG,
Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 1-10-cr-00199-1)
District Judge: Honorable Juan R. Sanchez

_____

Argued August 14, 2012
Before: MOTZ,[*] DAVIS,[**] and WALKER,[***] *Circuit Judges*

(Filed: August 24, 2012 )

Brett G. Sweitzer (Argued)
Assistant Federal Defender
Federal Community Defender Office for the Eastern District of Pennsylvania

---

[*] Honorable Diana Gribbon Motz, Circuit Judge of the United States Court of Appeals for the Fourth Circuit, sitting by designation.

[**] Honorable Andre M. Davis, Circuit Judge of the United States Court of Appeals for the Fourth Circuit, sitting by designation.

[***] Honorable John Walker, Jr., Senior Circuit Judge of the United States Court of Appeals for the Second Circuit, sitting by designation.

601 Walnut Street, Suite 540 West – Curtis Center
Philadelphia, Pennsylvania 19106
     *Counsel for Appellant*

Paul L. Gray (Argued)
Assistant United States Attorney
Office of United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, Pennsylvania 19106

———————

OPINION OF THE COURT

———————

PER CURIAM:

Donald Anthony Young pleaded guilty to mail fraud and money laundering. On appeal, he raises a single issue. Young contends that the district court erred in applying an obstruction-of-justice enhancement to his sentence pursuant to United States Sentencing Guideline § 3C1.1. For the reasons that follow, we hold that the court did err in applying the enhancement to Young's sentence and so we vacate the judgment of the district court and remand for re-sentencing.

I.

For many years, Young was the managing member of an investment advising company named Acorn Capital Management, LLC ("Acorn") and also controlled two investment entities, Acorn Capital Management II LP and Acorn II LP. Using these entities as well as a predecessor entity, Young operated a Ponzi scheme beginning by

November 1999. Over the course of nearly a decade, Young stole approximately $25 million of investors' funds for his own personal benefit.

On January 13, 2009, the SEC's Office of Compliance Inspections and Examinations ("OCIE") informed Young that it would conduct an on-site examination of Acorn beginning on January 21, 2009. The notice requested that certain records, which SEC regulations required Acorn to maintain, be made available for inspection on that date. The SEC's on-site examination lasted through January 30, 2009. During the examination, Young produced some, but not all, of the requested records. On the last day of the site visit, the examiners provided Young with a list of 35 requested documents that he had not yet provided, including some that the examiners deemed crucial, including investor lists and quarterly reports.

Over the next two months, the OCIE examiners, Young, and Young's counsel corresponded about these documents. In this correspondence, Young promised to produce the requested documents. Ultimately, however, he failed to turn over all of the documents. According to an SEC representative, if Young had made all of the requested documents immediately available to the SEC, the agency would have been able to file an enforcement action sooner. Instead, the examiners were forced to spend time seeking documents from various third parties, including Acorn's trading broker and accountant. The documents received from third parties were inconsistent with some of Young's disclosures and, therefore, suggested fraudulent behavior by Young. During this time period, Young continued to operate his Ponzi scheme, and it was later determined that he caused investors an additional loss of approximately $74,000.

3

On April 17, 2009, the SEC filed a civil enforcement action against Young alleging violations of the securities laws and requesting the return of ill-gotten gains. Almost immediately thereafter, Young voluntarily initiated contact with the Government, which resulted in a meeting on April 22, 2009 with SEC officials and government prosecutors in which Young confessed his wrongdoing. He also admitted that he had deliberately withheld documents from the OCIE examiners. He subsequently cooperated in all respects with the criminal investigation.

On April 1, 2010, almost a year after the SEC filed its civil enforcement action, a federal grand jury returned an indictment charging Young with one count of mail fraud in violation of 18 U.S.C. § 1341 and one count of money laundering in violation of 18 U.S.C. § 1957. The indictment alleged that Young engaged in a massive fraudulent scheme from November 1999 to April 2009. Notably, the indictment listed Young's concealment of documents from the OCIE examiners as an overt act in this scheme to defraud.

Young pled guilty to both mail fraud and money laundering. He stipulated to causing a loss of more than $20 million and agreed to Guidelines enhancements to his sentence based on that amount, the number of his victims, his use of sophisticated means pertaining to the execution or concealment of the offense, his abuse of a position of private trust, and his conviction for money laundering.[1] However, Young refused to

---

[1] The stipulated Guidelines calculation also included downward adjustments for acceptance of responsibility.

4

stipulate that his conduct during the OCIE examination merited the imposition of a U.S. Sentencing Guidelines § 3C1.1 enhancement for obstruction of justice. The district court nonetheless applied that enhancement, determining that Young's deliberate failure to produce documents during the OCIE examination constituted obstruction of justice within the scope of U.S.S.G. § 3C1.1. The inclusion of the obstruction enhancement increased Young's suggested Guideline sentence from a range of 135 to 168 months imprisonment to a range of 168 and 210 months of imprisonment. The district court sentenced Young to a 210-month term of imprisonment. Young now appeals.

## II.

Because Young challenges only the district court's interpretation and application of the obstruction-of-justice enhancement and none of the underlying facts, we review the judgment of the district court <u>de novo</u>. <u>United States v. Jenkins</u>, 275 F.3d 283, 286 (3d Cir. 2001).

The U.S. Sentencing Guidelines provide the following enhancement for conduct that obstructs the administration of justice:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1. The commentary to this guideline provides examples of the kinds of conduct to which this enhancement applies, including witness and juror intimidation,

5

perjury, destroying or concealing evidence material to an official investigation or judicial proceeding, and providing materially false information to a judge or to a probation office with respect to a presentence or other investigation. Id. § 3C1.1, cmt. n.4. On appeal, Young advances two arguments as to why the district court erred by applying the obstruction-of-justice enhancement to his sentence. Because we find the first dispositive, we need not address the second.

The parties seem to agree that United States v. Clark, 316 F.3d 210 (3d Cir. 2003) governs resolution of Young's first argument. In Clark, the Third Circuit held conduct constituting "a constituent part" of the underlying charged offense cannot support an obstruction enhancement under § 3C1.1. Id. at 211. Young argues that his failure to produce documents during the OCIE's examination constitutes "a constituent part" of his underlying fraud offense, and so, under Clark, this conduct cannot provide the basis for a § 3C1.1 obstruction enhancement. The Government counters that Clark is a narrow holding that does not prevent Young's allegedly obstructive conduct from receiving an obstruction enhancement.

In Clark, the defendant pled guilty to representing himself falsely as a citizen of the United States. Id. The district court imposed an obstruction enhancement under § 3C1.1 to the defendant's sentence because, in addition to his oral misrepresentations of his citizenship status, he subsequently produced a fake birth certificate that allegedly impeded an INS investigation into his citizenship claim. Id. The district court determined that the defendant's production of the birth certificate was "additional criminal conduct separate and apart from the basic underlying offense of falsely

6

representing identity and nationality," which constituted obstruction of justice meriting a § 3C1.1 enhancement. Id. The Third Circuit reversed, explaining that "the conduct that is cited as an obstruction is actually activity that is part of the underlying charged offense." Id. at 213. The Clark court pointed out that the assertedly obstructive conduct occurred during the period of criminal activity alleged in the indictment and "thus is encompassed within the time the crime was said to have occurred." Id.

In doing so, the Clark court recognized a circuit split over the proper application of the obstruction enhancement and adopted the view of the Eighth Circuit over that of the Sixth Circuit. Id. The Clark court initially examined United States v. Sabino, 307 F.3d 446 (6th Cir. 2002), in which the Sixth Circuit upheld the application of a § 3C1.1 obstruction enhancement based on the defendants' perjury to the grand jury even though that perjury was part of the charged conspiracy to defraud. See Clark, 316 F.3d at 212. The Clark court contrasted this holding with that in two Eighth Circuit cases -- United States v. Lamere, 980 F.2d 506, 517 (8th Cir. 1992) and United States v. Lloyd, 947 F.2d 339, 340 (8th Cir. 1991). Both held that an obstruction enhancement pursuant to § 3C1.1 did not apply to conduct that was part of the underlying crime. Lamere, 980 F.2d at 517 (explaining that circuit precedent holds that section 3C1.1 "does not apply to conduct that is part of the crime itself"); Lloyd, 947 F.2d at 940 ("Section 3C1.1 does not apply to conduct that is part of the crime itself."). After examining the facts and rationale of the Sixth Circuit in Sabino and the Eighth Circuit in Lloyd and Lamere, the Third Circuit declared that it was not persuaded by the Sixth Circuit's approach and instead aligned itself with the contrary view of the Eighth Circuit. See Clark, 316 F.3d at 213.

In the case at hand, as in Clark, Young's assertedly obstructive conduct occurred during the period of criminal activity alleged in the indictment. The indictment specifically charges that the scheme to defraud continued during the time of the OCIE investigation, i.e., from November 1999 through April 2009. Moreover, the indictment also charges the asserted obstructive conduct as an overt act, alleging that beginning in January 2009, Young "attempted to thwart the investigation by refusing to supply the SEC with documents he was required to supply . . . ." Inclusion of this conduct in the indictment is hardly unusual; crimes involving fraud frequently include conduct constituting "false or fraudulent pretenses[ and] representations." 18 U.S.C. § 1341; cf. United States v. Werlinger, 894 F.2d 1015, 1017 (8th Cir. 1990) (rejecting an obstruction-of-justice enhancement based on the defendant's entreaties to his co-workers to help conceal his embezzlement in advance of an internal audit and noting that the "offense of bank embezzlement itself encompasses elements of fraud, deceit, and concealment" and "[i]t is difficult to imagine an embezzler who does not take some affirmative steps to conceal his wrongdoing"). Thus, here, as in Clark, "the conduct that is cited as an obstruction is actually activity that is part of the underlying charged offense." Clark, 316 F.3d at 213.[2]

---

[2] The Government maintains that Clark is in fact a "very narrow" holding that applies only in cases in which the allegedly obstructive conduct is identical to the underlying offense. The Government bases this contention on the Clark court's passing observation that there (unlike the case at hand), the assertedly obstructive conduct -- production of a false birth certificate -- was itself a violation of the relevant statute and so "had precisely the same effect" as the charged crime. Clark, 316 F.3d at 213. The Government makes too much of this one sentence. For, if the Clark holding were so
(Continued)

Accordingly, we must reject the Government's contention here that the obstructive conduct in this case is separate from the charged crime, and thus constitutes a proper basis for the obstruction enhancement. In sum, we conclude that Clark requires us to hold that the district court erred by applying an obstruction-of-justice enhancement to Young's sentence.[3]

## III.

We recognize that the district court may decide that, pursuant to proper application of the 18 U.S.C. § 3553(a) factors (which may take into account Young's conduct with respect to the SEC investigation), Young nonetheless merits a longer sentence than provided by the new guideline calculation, including a sentence of 210 months. But given that the court sentenced Young using an improper Guideline calculation, we must vacate the judgment of the district court and remand for resentencing.

narrow, the court's analysis of relevant precedent from the Sixth and Eighth Circuits would have been superfluous and the court would not have needed to reach the circuit split. We are persuaded that Clark held that obstructive conduct need only be "part of the underlying charged offense" to avoid the § 3C1.1 enhancement. Id.

[3] The Government also asserts that U.S. Sentencing Guideline Application Note 4(D) covers Young's conduct. Application Note 4 provides examples of conduct covered by § 3C1.1, including "concealing . . . evidence that is material to an official investigation." U.S.S.G. § 3C1.1, cmt. n.4(D) (emphasis added). The Government insists that Young's conduct falls squarely within this example, but the record provides no support for the conclusion that OCIE's examination into Acorn was anything other than routine regulatory oversight. It seems unlikely that such an examination constitutes an "official investigation" within the meaning of Application Note 4(D). But even if the OCIE's examination is an "official investigation," the Clark rationale would still preclude the application of the enhancement in the case at hand.