**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Osamu Miyagi PAYNE, a/k/a Sammy Payne, Defendant–Appellant.**

**No. 90–5386.**

United States Court of Appeals, Fourth Circuit.

Argued Oct. 3, 1991.

Decided Dec. 31, 1991.

As Amended Dec. 31, 1991.

T. Patrick Matus, Bender & Matus, argued, Charlotte, N.C., for defendant-appellant.

Thomas Michael Gannon, U.S. Dept. of Justice, Washington, D.C., argued (Thomas J. Ashcraft, U.S. Atty., Carl Horn, Asst. U.S. Atty., Charlotte, N.C., on brief), for plaintiff-appellee.

Before MURNAGHAN, Circuit Judge, and HOWARD, United States District Judge for the Eastern District of North Carolina, and HERLONG, United States District Judge for the District of South Carolina, sitting by designation.

OPINION

MURNAGHAN, Circuit Judge:

Upon pleading guilty to one count in a three-count indictment, Appellant Osamu Miyagi Payne was convicted of violating Title 18, U.S. Code, Sections 471–473 and 371, for his role in a conspiracy to produce and transfer counterfeit U.S. currency. In accordance with the terms of the plea agreement, the district court applied the United States Sentencing Guidelines. Appellant was sentenced to 36 months imprisonment, followed by three years of supervised release, a $2,500 fine and a $50 special assessment. The appeal involves a claim that the district court misinterpreted § 2B5.1(b)(1) of the Guidelines.

In determining the sentence, the district court computed the offense as a level eighteen and Payne's criminal history as category III, resulting in a sentencing range of 33–41 months. In arriving at level eighteen, the court first applied § 2B5.1(a) (Offenses Involving Counterfeit Bearer Obligations of the United States), which provides a base offense level of nine. As a specific offense characteristic of the cate-

gory of offenses involved, the Guideline provides that "[i]f the face value of the counterfeit items exceeded $2,000, increase by the corresponding number of levels from *the table at § 2F1.1* (Fraud and Deceit)." U.S.S.G. § 2B5.1(b)(1) (emphasis added). Determining that the face value of the counterfeited currency printed was approximately $620,000, the court applied the table at § 2F1.1(b)(1), which is the first of five specific offense characteristics for fraud and deceit offenses, and increased the offense level by ten levels.[1] Next, and the focus of the appeal in the present case, the court applied § 2F1.1(b)(2), which provides a two level increase for an offense involving "more than minimal planning" or "a scheme to defraud more than one victim."

Payne has contended that § 2B5.1(b)(1) of the Guidelines, in providing for an increase in the offense level based on the table in § 2F1.1 if the counterfeited money exceeds $2000, refers just to the *table* in § 2F1.1(b)(1), and that the other specific offense characteristics listed in § 2F1.1(b) are not thereby made applicable to counterfeiting sentences computed under § 2B5.1(b)(1), such provisions not being part of a table.

The issue on appeal is whether the district court erred in applying the two-level adjustment in § 2F1.1(b)(2) to appellant's counterfeiting offense. It did so pursuant to an understanding that the reference in § 2B5.1(b) to increase the level based on the table at § 2F1.1 applied to *all* of the

specific offense characteristics in § 2F1.1(b), and not just *the table* at § 2F1.1(b)(1). Yet the reference is just to the table.[2] It was error to apply the two-level adjustment in § 2F1.1(b)(2) to appellant's counterfeiting offense. The language of § 2B5.1(b)(1) plainly refers only to the table at § 2F1.1(b)(1). It does not incorporate the other specific offense characteristics at § 2F1.1(b)(2)–(5). It is not proper to excise the direction to the table or to force a result by making (1) equal (2).

Resolution of the appeal turns on the application of § 1B1.5 (Interpretation of References to Other Offense Guidelines) of the Guidelines to the language of § 2B5.1(b)(1). The issue of statutory construction is a pure matter of law which we review *de novo*. *See United States v. Blackburn*, 940 F.2d 107, 109 (4th Cir. 1991).

Section 1B1.5 provides in its entirety:

Unless otherwise expressly indicated, a reference to another guideline, or an instruction to apply another guideline, refers to the entire guideline, *i.e.*, the base offense level plus all applicable specific offense characteristics and cross references.

U.S.S.G. § 1B1.5 (Interpretation of References to Other Offense Guidelines). Yet here the language employed expressly indicates the *table, i.e.*, something has been otherwise expressly indicated.

Section 2B5.1, the Guideline applicable to appellant's counterfeiting conviction, pro-

---

**1.** Section 2F1.1 of the Guidelines provides in part:

(a) Base Offense Level: 6
(b) Specific Offense Characteristics
(1) If the loss exceeded $2,000, increase the offense level as follows:

| Loss (Apply the Greatest) | Increase in Level |
|---|---|
| (A) $2,000 or less | no increase |
| (B) More than $2,000 | add 1 |
| (C) More than $5,000 | add 2 |
| (D) More than $10,000 | add 3 |
| (E) More than $20,000 | add 4 |
| (F) More than $40,000 | add 5 |
| (G) More than $70,000 | add 6 |
| (H) More than $120,000 | add 7 |
| (I) More than $200,000 | add 8 |
| (J) More than $350,000 | add 9 |
| (K) More than $500,000 | add 10 |
| (L) More than $800,000 | add 11 |
| (M) More than $1,500,000 | add 12 |
| (N) More than $2,500,000 | add 13 |
| (O) More than $5,000,000 | add 14 |
| (P) More than $10,000,000 | add 15 |
| (Q) More than $20,000,000 | add 16 |
| (R) More than $40,000,000 | add 17 |
| (S) More than $80,000,000 | add 18 |

(2) If the offense involved (A) more than minimal planning, or (B) a scheme to defraud more than one victim, increase by 2 levels. U.S.S.G. § 2F1.1 (Fraud and Deceit).

**2.** There is, it is true, a referral to the comprehensive and all inclusive § 2F1.1, yet that is limited to an identification or location assistance, because the whole reference is solely to the § 2F1.1(b)(1) table, the only table in § 2F1.1.

vides for a base offense level of nine. As a specific offense characteristic, § 2B5.1(b)(1) provides for the following adjustment to that base offense level:

    (b) Specific Offense Characteristics

    (1) If the face value of the counterfeit items exceeded $2,000, increase by the corresponding number of *levels from the table* at § 2F1.1 (Fraud and Deceit).

U.S.S.G. § 2B5.1 (emphasis added). The sole question is whether the direction to apply *levels from the table* at § 2F1.1 refers only to what it says, namely, *levels from the table* in § 2F1.1(b)(1), or whether it "refers to the entire guideline" of § 2F1.1 within the meaning of § 1B1.5.

The government has contended that the language of § 2B5.1(b)(1), in referring to *§ 2F1.1*, is a reference "to the entire guideline" of § 2F1.1 within the meaning of § 1B1.5. That, in isolation, may well be true, but we are construing not just § 2F1.1 but "the table at § 2F1.1." The government's interpretation would require deletion of the word "table" from the Guideline. We are obliged to construe the Guideline in a way that does not render any word meaningless or superfluous. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979); *Bridger Coal Co./Pacific Minerals, Inc. v. Director, Office of Workers' Compensation Programs, U.S. Dep't of Labor*, 927 F.2d 1150, 1153 (10th Cir.1991). In addition, that interpretation would require application of the base offense level in § 2F1.1(a) as well as the specific offense

characteristics in § 2F1.1(b), since reference would be made to the "entire guideline." The language of the Guideline expressly limits the reference to the table at § 2F1.1(b)(1).[3]

The government has argued that the Sentencing Commission would have excluded the rest of § 2F1.1 more explicitly if it so intended. That, however, is not persuasive. The government has noted that the sentencing level enhancement in § 3B1.3 in chapter three of the Guidelines, which provides for an increase in the sentencing level of one who abuses a position of trust or uses a special skill, is expressly made inapplicable to a number of chapter two "Offense Conduct" guidelines,[4] and from that has argued that the Commission would have stated inapplicability more explicitly. Thus, the argument proceeds, the interpretation urged by Payne should not be accepted. However, the argument overlooks that something must first be included before the question of exclusion *vel non* arises.

Since the Commission by what it said referred explicitly to *the table* in § 2F1.1(b)(1) alone and the reference was sufficiently clear, it is irrelevant that the Commission could have used other language to mean something else. The language used is sufficiently explicit, plain and non-ambiguous to indicate a reference only to *the table* and not to the other specific offense characteristics.[5]

The fact that § 2B5.1(b)(1) only provides for an increase in the offense level based on the table in § 2F1.1 when the face value

---

**3.** If this issue arose today, the answer would be provided by a recent amendment to the Guidelines. Effective November 1, 1991, an amendment to the Commentary to § 1B1.5 makes it clear that the reference to a table in another section should be interpreted only as a reference to the specific subsection in which the table is located. *See* U.S.S.G. § 1B1.5, comment (n.1) (Nov.1991).

**4.** *See, e.g.,* U.S.S.G. § 2C1.2, comment (n.2) ("Do not apply the adjustment in § 3B1.3 (Abuse of Position or [sic] Trust or Use of Special Skill")); *United States v. Fuente–Kolbenschlag*, 878 F.2d 1377, 1380 (11th Cir.1989) (conclusion that district court correctly applied the adjustment for the use of special skill in § 3B1.3 is strengthened by fact that other guidelines expressly ex-

clude § 3B1.3 when the Commission so intended).

**5.** While it appears that no court has addressed the question head on, courts have enhanced a counterfeiting sentence based on the dollar amount of the counterfeit items, pursuant to the § 2B5.1(b)(1) reference to apply the table in § 2F1.1, without applying § 2F1.1(b)(2), even though the facts would appear to support a two-level enhancement as an offense which involved "more than minimal planning" or a "scheme to defraud more than one victim" within the meaning of § 2F1.1(b)(2). *E.g., United States v. Daughtrey*, 874 F.2d 213, 215 (4th Cir.1989) (defendant "passed counterfeit bills" in "various stores," "traveled to various cities," and "was observed passing counterfeit bills in three

of the counterfeit items exceeds $2,000 further indicates that the drafters intended to refer specifically to the table alone and not to the other specific offense characteristics in § 2F1.1(b). The table in § 2F1.1(b)(1) is applied to fraud and deceit offenses to increase a sentence based on the dollar value of a victim's losses, but such an enhancement only applies when the loss exceeds $2,000. Similarly, the reference in § 2B5.1(b)(1) to apply the table in § 2F1.1 comes into play only if the amount counterfeited exceeds $2,000. None of the other four specific offense characteristics in § 2F1.1(b)(2)–(5) is related to the monetary value of the losses. According to the government's position, the four other specific offense characteristics in the fraud and deceit guideline would apply to counterfeiting offenses pursuant to the reference in § 2B5.1(b)(1) only when the face value of the counterfeit items exceeds $2,000. Yet in computing a sentence under § 2F1.1 for fraud and deceit offenses, the four other specific offense characteristics would apply irrespective of the amount of the dollar loss.

The unlikelihood that such was the intention of the Sentencing Commission is underscored by the Commentary to § 2F1.1, which indicates that the Commission intentionally provided the two-level enhancement under § 2F1.1(b)(2) for fraud and deceit offenses involving "more than minimal planning" or "a scheme to defraud more than one victim" irrespective of the dollar loss.[6] There is no indication that the Commission intended that the computation of sentences for fraud and deceit offenses under § 2F1.1 should include application of the enhancement under § 2F1.1(b)(2) even when the losses are below $2,000, yet, on the contrary, the computation of sentences for counterfeiting offenses under § 2B5.1 should include the enhancement only when

the face value of the counterfeit items exceeds $2,000.

Finally, even if we believed that the government's interpretation was sufficiently reasonable that we were "left with an ambiguous statute" at the end of the process of statutory construction, *Chapman v. United States,* —— U.S. ——, 111 S.Ct. 1919, 1926, 114 L.Ed.2d 524 (1991) (quoting *United States v. Bass,* 404 U.S. 336, 347 (1971)), we would construe the guideline in favor of Payne under the rule of lenity. *See United States v. Blackburn,* 940 F.2d 107, 109 (4th Cir.1991) ("the rule of lenity applies to the interpretation of the Sentencing Guidelines in the same manner as it applies to the interpretation of criminal statutes").

Therefore, the sentence is vacated and we remand to the district court for recalculation of the sentence without the enhancement under § 2F1.1(b)(2).

VACATED AND REMANDED.

---

stores"); *United States v. Richardson,* 901 F.2d 867, 869 (10th Cir.1990) (defendant "solicited numerous individuals to pass the counterfeit obligations for him").

**6.** The Commentary states, in pertinent part:
 The extent to which an offense is planned or sophisticated is important in assessing its potential harmfulness and the dangerousness of the offender, *independent of the actual harm.*

A complex scheme or repeated incidents of fraud are indicative of an intention and potential to do considerable harm. In pre-guidelines practice, this factor had a significant impact, *especially in frauds involving small losses.* Accordingly, the guideline specifies a 2-level enhancement when this factor is present.
 U.S.S.G. § 2F1.1 (Fraud and Deceit), comment (backg'd) (emphasis added).