**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

JESUS MARTINEZ-VARELA, a/k/a Cruz
Echeverria-Mendez,
            *Defendant-Appellant.*

No. 07-4375

Appeal from the United States District Court
for the Western District of North Carolina, at Asheville.
Lacy H. Thornburg, District Judge.
(1:06-cr-00248)

Argued: March 21, 2008

Decided: June 25, 2008

Before WILKINSON, KING, and GREGORY, Circuit Judges.

Affirmed by published opinion. Judge Gregory wrote the opinion, in which Judge Wilkinson and Judge King joined.

## COUNSEL

**ARGUED:** Raquel Kathy Wilson, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Asheville, North Carolina, for Appellant. Amy Elizabeth Ray, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee. **ON BRIEF:** Claire J. Rauscher, Executive Director, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Ashe-

ville, North Carolina, for Appellant. Gretchen C. F. Shappert, United States Attorney, Charlotte, North Carolina, for Appellee.

**OPINION**

GREGORY, Circuit Judge:

The Appellant, Jesus Martinez-Varela ("Varela"), a/k/a Cruz Echeverria-Mendez, pled guilty to illegal reentry into the United States after deportation following an aggravated felony, in violation of 8 U.S.C. § 1326(a) and (b)(2). United States Sentencing Guideline ("U.S.S.G.") § 2L.1.2(b)(1) provides that the base offense level for a person convicted of illegal reentry into the United States should be increased by twelve levels if the defendant was previously convicted of a drug trafficking offense for which the "sentence imposed" was thirteen months or less, and sixteen levels if the "sentence imposed" was greater than thirteen months.

The district court concluded that Varela's three prior felony drug trafficking convictions — all of which were committed on the same day and arose out of the same set of events — should be aggregated per U.S.S.G. § 4A1.2(a)(2) to calculate his "sentence imposed." Upon aggregation, Varela's sentences added up to twelve-sixteen months, thus making Varela eligible for the sixteen-level enhancement under U.S.S.G. § 2L.1.2(b)(1)(A). Varela contends that the district court erred because the relevant Sentencing Guidelines did not call for aggregating his three prior sentences for felony drug convictions. For the reasons that follow, we affirm the district court's decision.

I.

On November 2, 2006, Varela pled guilty to illegal entry after deportation for an aggravated felony. Relying on U.S.S.G. § 2L1.2(a), the district court determined that Varela's base offense level was eight. In addition, the district court concluded, over Varela's objection, that he was eligible for the sixteen-level enhancement per U.S.S.G. § 2L1.2 (b)(1)(A) because of Varela's three 2004 state felony drug trafficking convictions: possession with intent to distribute

cocaine, possession with intent to distribute marijuana, and possession with intent to distribute methamphetamine. Varela received concurrent sentences of six to eight months for the cocaine and marijuana possession charges. In addition, Varela received a sentence of six-eight months for the methamphetamine possession charge with the sentence to run consecutive to the marijuana and cocaine possession sentences. The PSR determined, and the district court agreed, that the Guidelines require the aggregation of Varela's three sentences, resulting in a combined sentence of twelve-sixteen months. Since the maximum aggregated sentence exceeded the thirteen months necessary to apply the U.S.S.G. § 2L.1.2(b)(1)(A) enhancement, Varela's base offense level was increased by sixteen levels. After the district court applied a three-level reduction for acceptance of responsibility, Varela's offense level totaled twenty one, which combined with his criminal history category of IV, resulted in a guideline range of fifty-seven to seventy-one months imprisonment. The district court sentenced Varela to a guideline sentence of sixty-four months imprisonment and three years supervised release.

Varela appeals the decision of the district court to apply the sixteen-level enhancement.

## II.

We review a district court's sentence under an abuse of discretion standard for procedural reasonableness. The first task in this process, and the only task in this case, is to determine if the district court properly calculated the applicable Guidelines range. *Gall v. United States*, 128 S.Ct. 586, 596 (2007). Since the applicable Guidelines range is directly related to a defendant's offense level, we focus on the district court's decision to aggregate Varela's three prior felony sentences when calculating his "sentence imposed" under U.S.S.G. § 2L1.2. U.S.S.G. § 2L1.2, Application Note 1(B)(vii), defines sentence imposed[1] as:

> "Sentence of imprisonment" **has the meaning given that term in Application Note 2 and subsection (b) of § 4A1.2**

---

[1]The Guidelines treat the terms "sentence imposed" and "sentence of imprisonment" as synonyms.

> **(Definitions and Instructions for Computing Criminal History)**, without regard to the date of the conviction.

(emphasis added). A plain reading of the cross-referenced provisions confirms that neither of them address the issue of aggregation. Section 4A1.2(b) defines sentence of imprisonment as "a sentence of incarceration and refers to the maximum sentence imposed" while § 4A1.2, Application Note 2, states that "in the case of an indeterminate sentence," e.g., six to eight months, the maximum sentence is the longest sentence possible. Thus, in Varela's situation, the maximum sentence for *each* of his three felonies would be eight months. Thus, without aggregating the sentences, the "sentence imposed" by the district court would not have exceeded the thirteen-month threshold necessary to make Varela eligible for the sixteen-level enhancement under U.S.S.G. § 2L1.2.

Due to the lack of any guidance on the issue of aggregation from the cross-referenced provisions, the PSR recommended, and the district court agreed, that it was appropriate to turn to a non-referenced provision, U.S.S.G. § 4A1.2(a)(2), which states, in relevant part:

> For purposes of applying § 4A1.1(a), (b), and (c), if prior sentences are counted as a single sentence, use the longest sentence of imprisonment if concurrent sentences were imposed. **If consecutive sentences were imposed, use the aggregate sentence of imprisonment**.

(emphasis added.) The central thrust of Varela's argument is that the district court erred in looking beyond the provisions specifically cross-referenced in U.S.S.G. § 2L1.1. In support of his argument, Varela cites to our case law and the Guidelines themselves. Most persuasively, Varela refers us to U.S.S.G. § 1B1.5, Application Note 1, which states that "[a] reference may also be to a specific subsection of another guideline; . . . In such case, only the specific subsection of that other guideline is used."

The Government contends that U.S.S.G. § 4A1.2(b) cannot be read in isolation from U.S.S.G. § 4A1.2(a) when related offenses are involved because U.S.S.G. § 4A1.2(a) "instructs the court as to how to treat related offenses for purposes of determining the 'sentence

imposed' as a result of [Varela's] prior convictions." (Appellee's Br. 7.) Thus, despite U.S.S.G. § 4A1.2(a) not being cross-referenced, the Government argues that proper application of U.S.S.G. § 4A1.2(b) necessitates consideration of U.S.S.G. § 4A1.2(a). In addition, in response to Varela's U.S.S.G. § 1B1.5 argument, the Government cites us to U.S.S.G. § 1B1.5(b)(2) which makes it clear that the commentary only applies to an "offense guideline" and since Section § 4A1.2 involves calculating a defendant's criminal history points, § 1B1.5 is inapplicable.

The crux of this case boils down to whether the district court abused its discretion in looking beyond the specifically cross-referenced provisions in determining whether Varela's felonies should be aggregated. We are unable to locate any circuit court decision that conclusively resolves this issue in the context of these specific Guideline provisions. However, circuit courts have addressed the relationship between Chapter 4 and § 2L1.2. *See e.g.*, *United States v. Frias*, 338 F.3d 206, 210 (3d Cir. 2003) ("The Government disputes [Defendant's] conclusion that there is a theoretical difference between Chapter 4 and § 2L1.2, arguing that each section is clearly aimed at the same thing, which is varying the punishment based on the criminal record and thus the expected dangerousness of the offender. We agree, believing that, while it may not always be appropriate to look at other sections of the Guidelines to interpret a term, such a course is warranted in this case."); *United States v. Moreno-Cisneros*, 319 F.3d 456, 460 (9th Cir. 2003) (holding that "Section 4A1.2 is a broadly applicable section of the Guidelines"); *United States v. Galicia-Delgado*, 130 F.3d 518, 521 (2d Cir. 1997) ("We note that the definitions found in § 4A1.2 have often been borrowed to interpret terms in § 2L1.2"). In addition, we addressed the propriety of a district court's decision to look beyond cross-referenced provisions in *United States v. Payne*, 952 F.2d 827 (4th Cir. 1991). In *Payne*, we decided that U.S.S.G. § 2B5.1(b)(1)'s cross reference to a table in U.S.S.G. § 2F1.1[2] precluded the district court from referenc-

---

[2]For purposes of clarity, we include a part of that table below:

1) If the loss exceeded $2,000, increase the offense level as follows:

| Loss (Apply the Greatest) | Increase in Level |
| --- | --- |
| (A) $2,000 or less | no increase |

ing any other part of that guideline. As the Government correctly points out, *Payne* is easily distinguished from the instant case because the guideline provision cross-referenced provided a complete answer to the relevant issue — i.e., how many levels the face value of the counterfeited currency increased the defendant's base offense level.

It makes little sense to look beyond the cross-referenced provisions when those provisions themselves resolve the query involved. In addition, while the instant case involved calculating Varela's criminal history points, *Payne* concerned determining the defendant's offense level. Thus, in our view, *Payne*, while informative, fails to directly resolve the question of how far a district court can "stray" from cross-referenced provisions to resolve an ambiguity in the Guidelines.

The Guidelines themselves provide us with some guidance in resolving the issue. Section 1B1.11, Background, citing to the Second Circuit's decision in *United States v. Stephenson*, 921 F.2d 438 (2d Cir. 1990) states that the Guidelines should "be applied as a cohesive and integrated whole rather than in a piecemeal fashion." (internal quotation marks omitted). This guidance provides persuasive evidence that under appropriate circumstances, referral to a related guideline provision is not a disfavored approach. This approach also conforms with the post-Booker approach to the sentencing guidelines, which transformed the guidelines from mandatory to advisory. Of course, the advisory nature of the guidelines does not mean that district courts are free to disregard the relevant guidelines and any cross-references within those guidelines. However, in cases in which the guidelines themselves provide that interpreting a cross-referenced provision requires looking to another section, it would nonsensical for a district court to refuse to do so. This is especially the case when the related provision that definitively addresses the matter in question.

This is precisely the situation we have in this case. While the cross-referenced provisions do not address aggregation, § 4A1.1's Com-

---

| | | |
|---|---|---|
| (B) | More than $2,000 | add 1 |
| (C) | More than $5,000 | add 2 |
| (D) | More than $10,000 | add 3 |
| (E) | More than $20,000 | add 4 |

mentary states that "[t]he definitions and instructions in § 4A1.2 govern the computation of the criminal history points. Therefore, §§ 4A1.1 and 4A1.2 must be read together." This Commentary provides us with strong evidence that these two provisions should be read together in determining Varela's criminal history points. Thus, based on the instructions from the guidelines themselves, guidance from the relevant provisions in question, and the lack of any persuasive or direct precedent to the contrary, we conclude that the district court properly aggregated Varela's sentences.

## III.

For the foregoing reasons, we affirm the district court's decision.

*AFFIRMED*